UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Vaughn*, 7:20cv134 | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

# ORDER

This Order addresses Vaughn's MIL No. 1, in which he seeks exclusion of evidence, testimony, reference or argument related to his VA/DoD Joint Disability Board Claim in August 2009 ("Board Claim"). *See* ECF Nos. 91, 104. For the following reasons, Vaughn's motion is **GRANTED IN PART and DENIED IN PART**.

## I.     Background

In August 2009, Vaughn sought review of his fitness for continued military service based on a shoulder injury and PTSD, and, if found unfit, a disability rating for determining his eligibility for military separation, retirement, and/or VA disability benefits. As part of his Board Claim, Vaughn submitted a "Memorandum for Record" describing the incident that resulted in his shoulder injury. *See* ECF No. 91-4 at 9.   He also submitted supporting memoranda from three other servicemembers—Sgts. Michael Stombaugh, Tarrah Schubert, and Damon

Chatterton—regarding both his shoulder injury and combat experiences related to his PTSD. *See* ECF No. 91-4 at 5-7. Vaughn was ultimately found "physically unfit" for continued service and medically retired with a 60% disability rating based on the service-related PTSD and shoulder injury. *See* Physical Evaluation Board (PEB) Proceedings dated October 5, 2011, ECF No. 91-3 at 4.

Defendants claim that Vaughn forged the Schubert and Chatterton memos in order to bolster his Board Claim, and they wish to use evidence of (or relating to) the alleged forgeries in various ways at trial.[1] More specifically, Defendants argue that the allegedly forged memos are independently admissible as substantive evidence on material issues in the case, as part of the factual basis for three experts' case-specific opinions, and as non-hearsay admissions of a party opponent. Defendants also seek to: (1) cross-examine Vaughn (and any character witness) about specific instances of untruthful conduct, including the alleged forgeries; (2) impeach the credibility of Vaughn's causation experts with evidence of the alleged forgeries; and (3) offer reputation and opinion testimony about Vaughn's character for untruthfulness from Chatterton and Schubert. Vaughn, for his part, moves broadly for exclusion of any evidence or argument related to the Board Claim.

---

[1] Defendants do not accuse Vaughn of forging the Stombaugh memo.

**II.     Discussion**

This dispute primarily involves two rules of evidence, Rules 608 and 403. Rule 608(a) provides that a witness's credibility may be attacked or rehabilitated through reputation and opinion evidence of the witness's character for truthfulness or untruthfulness. Extrinsic evidence of specific instances of prior conduct is not admissible on the issue of character for truthfulness. *See* Fed. R. Evid. 608(b). However, a court has discretion to allow inquiry into certain prior acts that are probative of truthfulness or untruthfulness, but only during cross-examination of either the principal witness or a character witness. *See id*. Where an inquiry is permitted and the witness denies committing the prior act or does not recall all or some of its details, the questioning party generally must take the witness's answer and may not introduce documents or other evidence concerning the act in an attempt to refute the witness's testimony. *See United States v. Matthews*, 168 F.3d 1234, 1244 (11th Cir. 1999).

Although Rule 608 precludes extrinsic evidence of a witness's prior misconduct *solely* to impeach the witness's general credibility, the evidence may be admissible for other impeachment purposes (e.g., to show bias, contradict a witness's material testimony, or demonstrate the witness has made prior inconsistent statements) or to prove or disprove materials facts in a case. *See United States v. Cousins*, 842 F.2d 1245, 1249 (11th Cir. 1988); *see also* Fed. R. Evid. 608 advisory

committee's note to 2003 amendment. Extrinsic evidence offered for those permissible purposes "is not rendered inadmissible because it happens to include references to specific bad acts of a witness," *see United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir. 1987), or "also tend[s] to show that the witness was a liar," *United States v. Abel*, 469 U.S. 45, 56 (1984).

Even where certain evidence or inquiry is permitted under Rule 608, its presentation at trial is subject to the overriding protection of Rule 403, which requires the exclusion of evidence whose probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and wasting time. *See United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001). District courts have broad discretion in assessing admissibility under Rules 608 and 403. *See Abel*, 469 U.S. at 54; *Novaton*, 271 F.3d at 1005.

### A. IDES Materials—Substantive Evidence & Prior Inconsistent Statements

Defendants first argue that the three memos are independently admissible as probative of material issues in this case, such as the circumstances surrounding Vaughn's military service and his alleged service-related injuries, regardless of whether the memos also implicate his credibility. The Court disagrees. For the same reasons that VA Compensation and Pension (C&P) materials are generally inadmissible in this litigation, so too are the Board Claim materials, with two exceptions.

Briefly, the VA and DoD have developed an integrated disability evaluation system (IDES) for assessing injured or ill service members' fitness for continued military service and, for those found unfit, providing a consistent set of disability ratings to determine the appropriate level of separation, retirement, and/or VA disability benefits.[2] A goal of the IDES is to better ensure that service members and their families are able to seamlessly transition from DoD to VA benefits, resources, and care. Service members are referred into the IDES when a physician determines they are not likely to be able to return to duty within 12 months of the onset of a medical condition. From that point on, the IDES process is materially identical to the C&P process for our purposes. The service members undergo a single set of comprehensive medical exams, and their records and claims materials are reviewed by various military Boards (e.g., Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB)) for a determination of fitness for duty, and by the VA for assignment of a disability rating accepted by both the DoD and the VA. As with C&P determinations, IDES determinations regarding service-connected injuries or illness present grave concerns of unfair prejudice and confusion in litigation, like this MDL, where a plaintiff's military service and alleged injuries during that service

---

[2] *See* Army Reg. 635-40, *Personal Separations: Disability Evaluation for Retention, Retirement, or Separation*, at 7 & 12 (Jan. 19, 2017), available at https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/ARN6811_AR635-40_ADMIN_WEB_Final.pdf.

are central to the claims and defenses. The risk is too great that the jury will defer to or substitute the MEB, PEB, and/or VA's determinations—made in the context of fitness for duty evaluations and disability ratings—for their own independent assessment of the evidence at trial. And there is no way to allow IDES materials into evidence without thoroughly explaining the broader context within which they were created. Consequently, as with C&P materials, IDES materials are generally inadmissible as substantive evidence in this litigation. *See* Fed. R. Evid. 403.

With that said, also as with C&P materials, medical/audiological experts are permitted to cite and discuss the results of certain audiometric results and/or objective medical tests conducted for the VA and DoD as part of the IDES process. However, the tests themselves will not be admitted into evidence, no military or VA personnel or contractors may testify about any test or any administrative decisions, and no reference to the IDES process will be permitted.

The admissibility of Vaughn-authored statements during the IDES process, *see* ECF No. 91-4 at 9, and the non-hearsay adoptive admissions contained in the Chatterton, Schubert, and Stombaugh memos, *see id*. at 5-7 & 11-17, for purposes of impeachment by prior inconsistent statement will depend on Vaughn's testimony at trial.[3] If Vaughn does not deny making (or adopting) a particular statement, then

---

[3] *See* Fed. R. Evid. 801(d)(2)(B) (statements that are not hearsay including statements "offered against an opposing party" and "the party manifested that it adopted or believed to be true"); *United States v. Santos*, 947 F.3d 711 (11th Cir. 2020) (holding that third-party's statements

Defendants will not be permitted to use the statements at all. *See Palanki*, 3:19cv2324, ECF No. 66 at 3. However, if Vaughn denies making (or adopting) the statement or does not remember doing so, Defendants will be permitted to use only the single specific statement in the respective memo(s) that reflects the prior inconsistent statement. All other substantive information on the memo must be redacted, and the context must be referred to only as a prior statement to a health care professional for the DoD/VA. This does not open the door to any and all impeachment information in any IDES file, for any case. Defendants are precluded from citing additional materials from the IDES records at trial.

**For the avoidance of doubt, Defendants are prohibited from attempting to use this ruling allowing impeachment by prior inconsistent statement to back-door in evidence, argument or insinuations about alleged forgery**. There is a legally significant difference between impeachment by prior inconsistent statement and impeachment by character. Vaughn-authored or -adopted statements in connection with the IDES process are relevant in this context solely because they demonstrate that a position taken by Vaughn in the past is inconsistent with a position he is taking at trial. It is the factual content of his own prior statements that is doing the impeachment work, not any questions about the origin or authenticity

---

on a form constituted adopted admissions when defendant signed and submitted the form in connection with his naturalization application).

of the documents in which the statements were made. Any violation of this ruling will result in sanctions.

### B.     Impeachment by Cross-Examination

Defendants also argue that Rules 608 and 403 permit them to cross-examine Vaughn, his experts, and any character witness about the alleged forged memos. *See* Def. Supp. Brief, ECF No. 103-11 at 15. The Court disagrees.

Under Rule 608(b), a court may, in its discretion, allow cross-examination of the principal witness or a character witness concerning particular instances of the principal witness's untruthful conduct, such as forgery. *See United States v. Van Dorn*, 925 F.2d 1331, 1335 (11th Cir. 1991) ("[T]he discretion given to the district courts has been especially broad when it comes to controlling cross-examination for impeachment purposes.") (internal marks omitted); *see also Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) ("Acts probative of untruthfulness under Rule 608(b) include . . . forgery, perjury, and fraud."). Although the prior conduct need not have resulted in a criminal conviction—if it had, the court's analysis would be governed by Rule 609—there must be a "good faith factual basis" for believing that it occurred. *See United States v. Adair*, 951 F.2d 316, 319 (11th Cir. 1992). Even where Rule 608(b) provides a court with discretion to allow an inquiry into certain conduct, Rule 403 "circumscribes [that] discretion by requiring the court to weigh the probative value

of the evidence against the danger of unfair prejudice from it." *Ad-Vantage*, 37 F.3d at 1464.

Here, while there may be an arguable good faith basis for Defendants' belief that Vaughn forged the Chatterton and Schubert memos—both former service members have sworn under oath in this case that they did not author, sign, or authorize their signatures be attached to the subject documents—the forgery accusation was conceived and pursued for the first time by Defendants in this litigation. Neither the DoD nor the VA (or any other agency) has ever investigated, accused, or sanctioned Vaughn for forgery or fraud in connection with his Board Claim (or any other matter). *See Ad-Vantage*, 37 F.3d at 1464 (abuse of discretion to allow cross-examination on temporally remote forgery accusation where witness was investigated by licensing entities, but charges were dismissed, and no sanctions resulted). Indeed, the evidence reflects that after the PEB raised concerns about "variations" in Vaughn's own description of the incident that injured his shoulder, Army medical personnel reviewed the Chatterton, Schubert, and Stombaugh memos and concluded the "only significant variation" in their accounts—the length of time between Vaughn's injury and when he sought treatment—was "understandabl[y]" attributable to the fading of memories with the passage of two years since the incident occurred. *See* Piantanida Memo, ECF No. 91-4 at 4. At this point, more than 12 years have elapsed since the alleged incident occurred, which means it is so

temporally remote that if Vaughn *had* been convicted of a crime for it, the conviction itself generally would not have been admissible. *See* Fed. R. Evid. 609(b) (convictions generally not admissible when more than 10 years have elapsed since the conviction and release from resulting imprisonment). "Temporally remote acts are only weakly probative of [a] witness's current credibility." *Ad-Vantage*, 37 F.3d at 1464; *see also Novaton*, 271 F.3d at 1006-07 (no abuse of discretion to preclude cross-examination on incident occurring more than six years prior to the instant trial); *United States v. Cox*, 536 F.2d 65, 72 (5th Cir. 1976) (abuse of discretion to allow impeachment evidence of defendant's false statements to immigration officials approximately 15 years before trial).

Defendants' proposed line of cross-examination also presents significant dangers of unfair prejudice, confusing the issues, misleading the jury and undue delay. Injecting Defendants' unproven allegations into this case will inevitably devolve the proceedings into the kind of lengthy trial within a trial on a peripherally related matter that Rules 608(b) and 403 are designed to prevent.[4] The parties will necessarily engage in a back-and-forth impeachment and rehabilitation of Vaughn

---

[4] For example, in support of their forgery theory, Defendants provided affidavits from Chatterton and deposition testimony from Schubert, identified alleged inaccuracies in the factual contents of the memos, and analyzed the "content, structure, and language" of the memos. *See, e.g.*, Def. Resp., ECF No. 88 at 2. In response, Plaintiffs offered handwriting analysis of the signatures on the subject memos, identified alleged inaccuracies in the factual contents of Chatterton and Schubert's sworn statements, and provided evidence of individual credibility issues with both Chatterton and Schubert.

(and any character witness) as to this collateral matter, and based on the undersigned's experience in the prior bellwether trials, one side or the other *will* attempt to push "much too far with too little." *See Abair*, 746 F.3d at 267. Extrinsic evidence of the alleged forgeries would remain inadmissible; therefore, the potential for confusion of the issues, misleading the jury, and needlessly wasting time in this context is considerable, as is the danger that the jury will "infer more from [Defendants' cross-examination] than is fairly inferable." *See Ad-Vantage*, 37 F.3d at 1464 ("[W]hen the allegations of wrongdoing were grave but no sanctions resulted, the danger [is] great the jury would infer more from the investigation than [is] fairly inferable."). On balance, any marginal relevance of the 2010 incident is substantially outweighed by the probability that unfair prejudice, confusion of issues, misleading the jury, and wasting time will result from allowing cross-examination about it.

Cross-examination of Vaughn's case-specific experts—Drs. Lawrence Lustig and Eric Bielefeld—regarding the forgery allegations also is precluded by the plain text of Rule 608(b)(2), which would only permit the inquiry with a witness who testifies about Vaughn's character for truthfulness. Neither Dr. Lustig nor Dr. Bielefeld offer reputation or opinion testimony on Vaughn's character for truthfulness. Rather, each explained only that they had no reason to doubt Vaughn's accounts of his noise exposure and auditory symptoms because those accounts are

consistent with his medical records, objective testing data, and the well-accepted symptomology found in patients with hearing loss and tinnitus.

## C.  Character for Untruthfulness

Defendants also argue that Rule 608(a) allows them to call Chatterton and/or Schubert to testify that Vaughn had a reputation in the Army for being untruthful and to provide opinion testimony about Vaughn's character for untruthfulness. *See* Def. Supp. Brief, ECF No. 103-11 at 15.

The proposed reputation testimony is clearly inadmissible.  Defendants, as its proponents, must establish a foundation for its admission by showing that the testifying witness is well enough acquainted with Vaughn, "the community in which he has lived and the circles in which he has moved, as to speak with authority" regarding his *current* reputation for truthfulness. *See United States v. Watson*, 669 F.2d 1374, 1381 & 1382 n.5 ( (11th Cir. 1982) ("Evidence of community reputation for truth and veracity should relate to reputation *at the time of trial*.") (emphasis added); *see also United States v. Whitmore*, 359 F.3d 609, 616-17 (D.C. Cir. 2004); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1552 (10th Cir. 1988).  Here, all three former service members—Vaughn, Chatterton, and Schubert—have been separated from the military for more than 11 years.  Neither Chatterton nor Schubert has seen or communicated with Vaughn in that time.  Neither of them has been shown to be acquainted with "the community in which" Vaughn has lived and

worked in the interim, or the "circles in which" Vaughn now moves. *See Watson*, 669 F.2d at 1381. Moreover, based on Defendants' proffer, neither of the two witnesses has even offered any general reputational observations. Rather, their statements to date have been limited to (a) assertions by each that the respective memos were not authored or signed by them; and (b) testimony from Schubert about her personal opinions on Vaughn's alleged untruthfulness while in the Army. Under these circumstances, any alleged reputational testimony from Chatterton and Schubert would be too temporally remote, and lack an adequate basis in fact, for admission under Rule 608(a).

The proposed opinion testimony of Vaughn's character for untruthfulness *might* be admissible, depending on the foundation laid at trial. To lay a proper foundation for opinion evidence of this nature, the proponent must show that the opinion witness personally knows the principal witness, has had an opportunity to form a personal impression about his general character for truthfulness, and will relate only that impression at trial. *See Watson*, 669 F.2d at 1382. Rule 608(a) "imposes no prerequisite condition upon long acquaintance or recent information about the witness; cross-examination can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness." *Id*. Even where opinion testimony is permissible under Rule 608(a), Rule 608(b)

precludes its proponent from inquiring into alleged specific instances of the principal witness's alleged untruthfulness on direct examination.

Applying these principles here, assuming a foundation of personal knowledge and experience with Vaughn is established at trial, Schubert and/or Chatterton may testify to their personal impressions of Vaughn's untruthful character at trial, if they have one. But the opinion testimony for these witnesses ends there. Defendants may elicit testimony about how and when the witnesses knew Vaughn, and what the witness's opinion of Vaughn's character for truthfulness is. Full stop. The witnesses may *not* testify regarding any specific instances of Vaughn's alleged untruthfulness, including the alleged forgery, or offer commentary on his abilities or commitment as a soldier.[5] Additionally, opinion testimony of this nature will open the door to appropriate rebuttal evidence of Vaughn's truthful character.

**SO ORDERED**, on this 13th day of April, 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[5] *See, e.g.*, Schubert Dep., ECF No. 104-1 at 11 (testifying that Vaughn was "[n]ot good" as a soldier, that "[h]e was always complaining about injuries that he didn't have[,] [a]nd would do anything and everything and say anything and everything to get out of stuff").